# EXHIBIT A-1

#39303256_v1

Case 3:25-cv-00309   Document 1-2   Filed on 09/24/25 in TXSD   Page 2 of 15

Filed
9/22/2025 2:25 PM
Patti L. Henry
District Clerk
Chambers County, Texas
By: _____ Deputy

CAUSE NO. 25DCV0826 _____

| | | |
|---|---|---|
| **DK TRADING & SUPPLY LLC and LION OIL COMPANY, LLC,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § § § | |
| v. | § § § § | 344th ____ **JUDICIAL DISTRICT** |
| **MAREX GROUP PLC and BTX ENERGY LLC,** | § § § | |
| *Defendants.* | § | **CHAMBERS COUNTY, TEXAS** |

### PLAINTIFFS' ORIGINAL PETITION

COMES NOW, Plaintiffs DK Trading & Supply, LLC and Lion Oil Company, LLC (collectively "Delek") and file this Original Petition against Defendants Marex Group PLC ("Marex") and BTX Energy LLC ("BTX Energy," and together with Marex, "Defendants"), and would respectfully show the Court as follows:

### I.   DISCOVERY LEVEL

1. Delek intends to conduct discovery under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.   CLAIM FOR RELIEF

2. Pursuant to Texas Rule of Civil Procedure 47, Delek seeks monetary relief over $1,000,000 and a demand for judgment for all the other relief to which the Court finds Delek justly entitled. The damages sought are within the jurisdictional limits of the Court.

### III.   PARTIES

3. Plaintiff DK Trading and Supply, LLC is a Delaware limited liability company with its principal place of business in Brentwood, Tennessee.

4. Plaintiff Lion Oil Company, LLC is an Arkansas limited liability company with its principal place of business in Brentwood, Tennessee.

5. Defendant Marex Group plc is a limited liability company formed under the laws of England and Wales. Marex may be served at its registered office 155 Bishopsgate, London, United Kingdom, EC2M 3TQ or wherever it may be found.

6. Defendant BTX Energy, LLC is a Texas limited liability company. BTX Energy may be served through its registered agent Weldon Campbell at 18222 Walden Forest Dr, Humble, TX 77346 or wherever it may be found.

## IV.    JURISDICTION AND VENUE

7. This Court has personal jurisdiction over BTX Energy because it conducts business and/or resides within the State of Texas, including in Chambers County. This Court has personal jurisdiction over Marex because it entered into a guaranty in favor of DKTS, covering services to be provided in Chambers County, Texas.

8. Venue is proper in Chambers County, Texas, because a substantial part of the acts or omissions giving rise to Delek's claims occurred in Chambers County, and BTX Energy resides and/or has its principal office in Chambers County. Texas. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1)-(3).

## V.    BACKGROUND

9. DK Trading & Supply, LLC ("DKTS") purchases crude oil on behalf of Lion Oil Company ("Lion Oil") for delivery to and refining at Lion Oil's refinery in El Dorado, Arkansas (the "Refinery"). Starting in January 2025, Pinnacle Fuel, LLC ("Pinnacle") sold crude oil to DKTS at BTX Energy's terminal facility in Winnie, Texas pursuant to a crude oil purchase agreement between the DKTS and Pinnacle (the "Agreement"). Pinnacle's liabilities and

Copy from re:SearchTX

obligations under the Agreement are guaranteed by Marex Group PLC ("Marex") pursuant to a Guaranty dated April 3, 2024 (the "Guaranty"). A copy of the Guaranty is attached as **Exhibit 1.**

10. BTX Energy is a petrochemical marketing company specializing in fuel oil blend stocks, gasoline blend stocks, aromatics, olefins, heavy fuels, and crude oil. According to its website, "[s]ince 2019, BTX Energy, LLC has assisted refiners, chemical and petrochemical manufacturers in placing their co-product & by-product materials into value added applications. In our fuel oil blending program, we blend a wide range of refinery and petrochemical products from various markets that helps power the industrial sector."[1] BTX Energy "welcome[s] the opportunity to purchase excess inventories, materials that are off-spec, expired and/or adulterated streams."[2]

11. The crude at issue was trucked from BTX Energy's facility to Allied Truck Station ("Allied Truck Station") at Energy Transfer's Terminal in Colorado City, Texas where it was delivered into the West Texas Gulf ("WTG") pipeline. From there, it was transported on Energy Transfer's pipeline system to Lion Oil's Refinery in El Dorado, Arkansas (the "Refinery").

12. In February 2025, the Refinery discovered that the organic chloride levels in the Heavy Naphtha Hydrotreater were extremely high. Upon discovery, the Refinery immediately began troubleshooting to find the source. Based on timing and route of crude deliveries, the Refinery correlated the initial spike in high organic chlorides with a batch of WTS crude shipped on Mid-Valley Pipeline. Further testing confirmed the contaminated crude's origination point within the Energy Transfer pipeline system was Allied Truck Station—the location where Pinnacle's crude was delivered from BTX's facility.

---

[1] https://btxenergy.com/
[2] *Id.*

Copy from re:SearchTX

13. DKTS then tested to identify the point source of the contamination delivered into Allied Truck Station. It tested trucks inbound to Allied Truck Station and load locations for trucks that discharge at the Allied Truck Station. On or about March 1, 2025, a third-party testing company tested two inbound trucks with product DKTS purchased from Pinnacle that originated from BTX Energy's facility. The certificates of analysis confirmed that the product purchased from Pinnacle and stored at BTX Energy's facility contained 2,363.7 ppm and 5,668.6 ppm respectively of organic chlorides, which on average is *1,000 times over specifications* listed in the Agreement and is unacceptable in the industry.

14. DKTS requested to test Pinnacle's source of crude at BTX Energy. Pinnacle initially consented to the testing but later recanted and BTX Energy and Pinnacle refused to allow the inspectors into the terminal and refused to allow them to take samples.

15. As a result of the investigation, it is clear Pinnacle sold contaminated product to DKTS (the "Contaminated Crude"), and that the Contaminated Crude originated from BTX Energy's facility. This contamination, among other things, makes the product unmerchantable, unusable, unfit for the purposes it was purchased, and is a breach of the Agreement and a breach of Pinnacle's express and implied warranties. DKTS expressly rejected and revoked acceptance of the Contaminated Crude Pinnacle sold to DKTS, and demanded Pinnacle pick up the Contaminated Crude remaining in the two trailers and tanks throughout Energy Transfer's pipeline system. Pinnacle refused.

16. The Contaminated Crude sold by Pinnacle from BTX's facility was delivered into Energy Transfer's crude gathering system and (unbeknownst to DKTS) cross contaminated over 300,000 barrels of DKTS's clean crude oil within the system (the "Cross Contaminated Crude"). The Contaminated Crude delivered into the Refinery caused significant physical damage to the

Refinery, in addition to necessitating crude rate cuts, reduced throughput, and lost production and sales of refined product.

17. Pinnacle is liable to DKTS and Lion Oil for the significant damages it caused by selling Contaminated Crude, including under theories of breach of contract, breach of express warranty, breach of the implied warranties of merchantability and fitness, negligence, gross negligence, negligent misrepresentation and fraud.[3] Under Marex's Guaranty to DKTS, Marex is jointly and severally liable to DKTS for the damages caused by the Contaminated Crude.

18. DKTS and Lion Oil have suffered over $30,000,000 in damages, including attorney fees, to date as a direct result of the Contaminated Crude. Damages continue to accrue.

## VI. CONDITIONS PRECEDENT

19. All conditions precedent have been performed or have occurred.

## VII. CAUSES OF ACTION

### COUNT 1: DECLARATORY JUDGMENT (MAREX)

20. Delek repeats and realleges the factual allegations contained in the preceding paragraphs.

21. On April 3, 2024, Marex, as Guarantor, signed a Guaranty in favor of DKTS, as Counterparty.

22. Under the Guaranty, Marex agreed as follows:

> Guarantor hereby unconditionally guarantees to Counterparty the prompt payment of ***any and all obligations and liabilities of the Company*** [Pinnacle] under the Agreement, including, in case of default or as otherwise permissible under the Agreement, interest on any amount due, when and as the same shall become due and payable, whether on the scheduled payment dates, at maturity, upon acceleration, declaration of termination or otherwise, after giving effect to any applicable notice requirement or grace period and, at all times, in accordance with the Agreement.

---

[3] Based on the Agreement, DKTS and Lion Oil asserted their claims against Pinnacle directly in arbitration.

Copy from re:SearchTX

Ex. 1 ¶ 1. (emphasis added).

23. The Guaranty covers up to at least $10,000,000, inclusive of attorneys' fees and expenses associated with enforcement of this Guaranty by Counterparty. *Id.*

24. Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 et seq., DKTS therefore seeks a declaration from the Court that: Marex is obligated for any and all obligations and liabilities of Pinnacle to DKTS related to the purchase or sales of crude oil, including the Contaminated Crude, as defined above, up to at least $10,000,000.

## COUNT 2: NEGLIGENCE (BTX ENERGY)

25. Delek repeats and realleges the factual allegations contained in the preceding paragraphs.

26. BTX Energy owed a duty to Delek to act as a reasonable and prudent terminal and storage facility owner and operator in storing crude oil that would be marketed and sold to a Refinery in a manner that would keep the crude oil free from hazardous contaminants.

27. Upon information and belief, BTX Energy breached its duty to Delek when, among other things, it failed to use reasonable care to ensure the product delivered to Delek was free of contaminants, including organic chlorides.

28. Upon information and belief, BTX Energy's actions proximately caused injury to Delek, in whole or in part, resulting in damages that include, but are not limited to, the cost of repairing the Refinery, covering the contaminated crude oil, lost profits, and loss of use of the Refinery.

## VIII. ATTORNEYS' FEES

29. As a result of the breach of contract, Delek had to employ an attorney to bring this action to recover damages. Delek is entitled to its attorney's fees for filing and prosecuting this

Copy from re:SearchTX

lawsuit against Marex pursuant to section 37.001 of the Texas Civil Practice and Remedies Code and any other applicable law or in equity.

## IX.    JURY DEMAND

30.    Delek hereby demands a trial by jury and states that it has or will tender the required fee.

## X.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Delek prays that citations be issued and served upon Defendants requiring them to appear and answer herein; that upon consideration hereof by the Court or the jury, Delek have and recover judgment of, from, and against Defendants, as follows:

1. A judicial declaration that Marex is obligated for any and all obligations and liabilities of Pinnacle to DKTS related to the purchase or sales of crude oil, including the Contaminated Crude, as defined above, up to at least $10,000,000;

2. Actual damages, including all available direct and/or consequential damages, such as lost profits and cost of repairs;

3. Reasonable and necessary attorney's fees for prosecution of this suit and any appeal;

4. Court costs;

5. Prejudgment and post judgment interest; and

6. Such other and further relief, both general and special, at law and in equity, to which Delek may show itself justly entitled.

Copy from re:SearchTX

Dated: September 19, 2025 	Respectfully Submitted,

**BAKER & HOSTETLER LLP**

By: */s/ W. Ray Whitman*
W. Ray Whitman
State Bar No. 21379000
rwhitman@bakerlaw.com
Ryan A. Pittman
State Bar No. 24132842
rpittman@bakerlaw.com
Nikki L. Morris
State Bar No. 24098143
nmorris@bakerlaw.com
811 Main Street, Suite 1100
Houston, TX 77002
Telephone: (713) 751- 1600
Facsimile (713) 751-1717

**ATTORNEYS FOR PLAINTIFFS**

Copy from re:SearchTX

# EXHIBIT 1

Copy from re:SearchTX

**GUARANTY OF MAREX GROUP PLC**

Guaranty, dated as of the __03__ day of April, 2024 (the "Effective Date"), of Marex Group plc ("*Guarantor*"), a limited liability company formed under the laws of England and Wales, in favor of DK Trading & Supply, LLC (the "*Counterparty*").

1.      Guaranty.  In order to induce Counterparty to enter into the purchase, sale, and/or exchange of crude oil, refining feedstock, gasoline, refined products, natural gas liquids, natural gas, electricity, and/or other commodities and/or derivatives thereof (hereafter each referred to as an "Agreement"),  with Guarantor's wholly-owned subsidiary Pinnacle Fuel LLC, a limited liability company formed under the laws of the state of New York (the "*Company*"), Guarantor hereby unconditionally guarantees to Counterparty the prompt payment of any and all obligations and liabilities of the Company under the Agreement, including, in case of default or as otherwise permissible under the Agreement, interest on any amount due, when and as the same shall become due and payable, whether on the scheduled payment dates, at maturity, upon acceleration, declaration of termination or otherwise, after giving effect to any applicable notice requirement or grace period and, at all times, in accordance with the Agreement.  In the event that the Company fails to make any payment under the Agreement when due and after giving effect to any applicable notice requirement or cure period, Guarantor hereby agrees to make such payment, or cause any such payment to be made, promptly upon receipt of written demand from the Counterparty to Guarantor; provided, however, that delay by the Counterparty in giving such demand shall in no event affect Guarantor's obligations under this Guaranty. Guarantor is liable as a primary obligor (and not merely as a surety) for the amounts hereunder.  Notwithstanding anything to the contrary herein, the aggregate amount covered by this Guaranty shall not exceed USD 10,000,000 (ten million United States dollars), inclusive of attorneys' fees and expenses associated with enforcement of this Guaranty by Counterparty.

2.      Nature of Guaranty.  This Guaranty shall be one of payment and not of collection and shall be irrevocable in respect of any payment obligations incurred by the Company under the Agreement prior to the termination of this Guaranty as further provided below.  This Guaranty shall remain in full force and effect or shall be reinstated (as the case may be) if at any time any payment guaranteed hereunder, in whole or in part, is rescinded or must otherwise be returned by the Counterparty upon the insolvency, bankruptcy or reorganization of the Company or otherwise, all as though such payment had not been made.

3.      Consents, Waivers and Renewals.  Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of (i) the validity, regularity or enforceability (except as may result from any applicable statute of limitations) of the Agreement, (ii) any law, regulation or order of any jurisdiction or any other similar event affecting the term of the Agreement or of Counterparty's rights with respect thereto and (iii) to the fullest extent permitted by applicable law, any law, rule or policy that is now or hereafter promulgated by any governmental authority or regulatory body that may adversely affect the Company's ability or obligation to make or receive such payments.  Guarantor agrees that Counterparty may at any time and from time to time, without notice to or further consent of Guarantor, change the time, manner or place of payment or any other term of the Agreement, without impairing or affecting this Guaranty. Guarantor waives demands, promptness, diligence and all notices that may be required by law or to perfect Counterparty's rights hereunder except notice to Guarantor of a default by the Company under the Agreement, provided, however, that any delay in the delivery of notice shall in no way invalidate the enforceability of this Guarantee.  No failure, delay or single or partial exercise by Counterparty of its rights or remedies hereunder shall operate as a waiver of such rights or remedies.

4.      Representations and Warranties.  Guarantor hereby represents and warrants that (i) Guarantor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and

Copy from re:SearchTX

has full corporate power to execute, deliver and perform this Guaranty, (ii) the execution, delivery and performance of this Guaranty has been duly authorized by all necessary corporate action and does not contravene any statute, regulation or rule of any governmental authority or of Guarantor's constitutional documents, and (iii) this Guaranty constitutes the legal, valid and binding obligation of Guarantor enforceable against Guarantor in accordance with its terms, subject to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles.

5.  <u>Subrogation</u>.  Guarantor shall not exercise any right that it may acquire by way of subrogation under this Guaranty, by payment made hereunder or otherwise, until all amounts then due and payable by the Company under the Agreement shall have been paid in full.  Subject to the foregoing, upon payment of all such obligations of the Company, Guarantor shall be subrogated to the rights of the Counterparty against the Company.

6.  <u>Severability</u>.  In case any one or more of the provisions of this Guaranty shall for any reason be held to be illegal or invalid by a court of competent jurisdiction, it is the intention of each of the parties to this Guaranty that such illegality or invalidity shall not affect any other provision hereof, but this Guaranty shall be construed or enforced as if such illegal or invalid provision had not been contained herein unless such a court holds that such provisions are not separable from other provisions of this Guaranty.

7.  <u>Termination</u>.  This Guaranty is a continuing guaranty and shall remain in full force and effect from the Effective Date and expire two (2) years from the Effective Date, provided that it may be terminated at any time upon ten (10) days prior written notice to the Counterparty. This Guaranty shall continue in full force and effect with respect to any obligation of the Company under the Agreement entered into prior to the effectiveness of such written notice of termination.

8.  <u>Notices</u>.  Any notice or communication required or permitted to be made hereunder shall be made in the same manner and with the same effect as set forth in the Agreement.  Notices to Guarantor shall be made to the following address (or to such other address as may be designated by notice from Guarantor to the Counterparty:

Marex Group plc
Email: London-legal@marex.com
Address:  155 Bishopsgate, London, EC2M 3TQ, UK

9.  <u>Assignment</u>.  Neither Guarantor nor the Counterparty may assign its rights, interests or obligations hereunder to any other person (except by operation of law) without the prior written consent of the other party.

10.  <u>Miscellaneous</u>.  Each reference herein to Guarantor, Counterparty or Company shall be deemed to include their respective successors and permitted assigns. This Guaranty (i) shall supersede any prior or contemporaneous representations, statements or agreements, oral or written, made by or between the parties with regard to the subject matter hereof and (ii) may be amended only by a written instrument executed by Guarantor.

11.  <u>Governing Law</u>.  This Guaranty shall be governed by and construed in accordance with the internal laws of the State of New York as applicable to contracts or instruments made and to be performed therein. For the purposes of any proceeding arising out of this Guaranty, Guarantor hereby irrevocably consents to the exclusive jurisdiction of courts of the State of New York.

MG plc Pinnacle Fuel Guaranty for DK Trading  Supply (Final 19 March 2024)

Copy from re:SearchTX

*Signature page to follow*

Copy from re:SearchTX

IN WITNESS WHEREOF, Guarantor caused this Guaranty to be executed by its duly authorized representative.

          Marex Group plc

By:    _____
      Name: Rob Irvin
      Title: Director of Marex Group plc
      Date: 03 April 2024

By:    _____
      Name: Nick Jones
      Title: Group Head of Legal
      Date: 28 March 2024

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charliss Johnson on behalf of W. Ray Whitman
Bar No. 21379000
cajohnson@bakerlaw.com
Envelope ID: 105910079
Filing Code Description: Petition
Filing Description: Plaintiffs' Original Petition with Request
Status as of 9/23/2025 10:49 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nikki Morris | | nmorris@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| Nikki Morris | | nmorris@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| Ryan Pittman | | rpittman@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| Ryan Pittman | | rpittman@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| W. RayWhitman | | rwhitman@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| W. RayWhitman | | rwhitman@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| Alexandra Trujillo | | atrujillo@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |
| Alexandra Trujillo | | atrujillo@bakerlaw.com | 9/22/2025 2:25:31 PM | NOT SENT |